JOHN W. BISSELL et al., trustees, appellants,

*v.*

JOHN C. BESSON, receiver, respondent.

1. Where a mortgage is made by an insolvent corporation, pending a suit by a creditor to wind it up as an insolvent corporation, and also in violation of an injunction issued by the court of chancery, the mortgage is a nullity, and a subsequent dismissal of the creditor's suit will not render the mortgage a valid instrument.

2. An insolvent corporation has a right to prefer one creditor over another, but, in order to impart legal efficacy to its acts, in attempting to create preferences, it must exercise its right in that regard in a lawful manner.

On appeal from a decree advised by Vice-Chancellor Van Fleet, who filed the following conclusions:

The chattel mortgage assailed in this case was executed in contempt of the authority of this court. As the record in the case of *Day et al.* v. *The Argus Printing Company* now stands, that fact is indisputable. The mortgage was executed on the 17th day of November, 1888, and the suit of *Day et al.* v. *The Argus Printing Company* was not dismissed until November 19th, 1888, so that when the mortgage was executed the injunction, commanding the defendant corporation not to mortgage or otherwise dispose of its property, was in full force. The persons to whom the mortgage was made knew this fact. They knew that the corporation was insolvent; that some of its creditors had, on behalf of themselves and all other creditors, commenced a suit against it to wind it up as an insolvent corporation, and that this court had issued an injunction interdicting the corporation from making any disposition whatever of its assets, to the end that its property might be sequestered, converted into money and the money distributed among its creditors in the manner directed by the statute. In this posture of affairs, it seems to me that there can be no doubt that the mortgage must be held to be a nullity, not only because it was executed in contempt of the authority of this court, but also because it was executed with the manifest design to defeat the fundamental purpose of that part of the statute concerning corporations which regulates the distribution of the assets of an insolvent corporation among its creditors. No one will pretend, I suppose, that if the suit of *Day et al.* against the defendant corporation had not been dismissed, the mortgage in question could be upheld as a valid instrument. While that suit remained pending, the mortgage was, in my judgment, an absolute nullity. And this was its legal condition, not merely because it had been executed in contempt of the authority of this court, but also because it is manifest, in view of the fact that a suit was then pending against it to wind it up as an insolvent corporation, that the mortgage was made and accepted with the intent to defeat one of the funda-

mental purposes of the statute concerning corporations. Though the suit has since been dismissed, the mortgage, nevertheless, remains infected with this vice. The dismissal of the suit did not give legal life and force to that which before the dismissal was a nullity. An insolvent corporation has a right, as the law now stands, to prefer one of its creditors over another, but, in order to impart legal efficacy to its acts, in attempting to create preferences, it is obvious that the highest considerations of public policy require that such right should be exercised in a lawful manner. Here it was not exercised in a lawful manner, but in plain contravention of a statute, and also in violation of an injunction.

In my judgment, the mortgage is a nullity.

*Mr. Robert L. Lawrence,* for the appellants.

*Messrs. Collins & Corbin,* for the respondent.

DIXON, J. (dissenting).

On September 13th, 1888, David B. Day filed a bill in chancery against the Argus Printing Company, a domestic corporation, on behalf of himself and all other creditors and stockholders of the company who should come in and contribute to the expense of the suit, alleging that he was a creditor of the corporation and that it was insolvent, and praying that it might be enjoined from receiving any debts and paying, transferring, mortgaging or otherwise encumbering its money or property, and continuing its business, and praying also that it might be decreed to be insolvent, and that a receiver might be appointed to take charge of and wind up its affairs, pursuant to the statute. Thereupon an order was made and served on the company that it should show cause, on September 17th, why an injunction should not issue and a receiver be appointed, and that until that order should be made absolute or be discharged the company should refrain from contracting debts, except in the usual and ordinary course of business, and from selling, assigning, transferring, mortgaging or encumbering its property. The return

of this order was regularly adjourned each week until November 19th.

On October 19th Bresnan & Walker, creditors of the corporation, filed their petition in the cause, setting forth that Day was settling his claims against the company, and they feared that the suit would be discontinued to their prejudice, and praying that they therefore might be admitted as applying creditors in the cause, and accordingly, on October 29th, the chancellor made an order so admitting them.

On November 17th the company settled with Day, Bresnan & Walker and some other creditors, by giving them a mortgage, and on November 19th the chancellor, upon the written consent of Day, Bresnan & Walker and the company, made an order for the final discontinuance of the suit.

On November 21st other creditors filed a similar bill, under which, on November 30th, the company was adjudged insolvent and a receiver was appointed.

The present suit is a bill by the receiver to set aside the mortgage on the facts above stated, and in it the chancellor decreed, on the advice of the vice-chancellor, that the mortgage should be set aside as a violation of his injunction and as a fraud upon the court. Hence this appeal.

So far as the decree adjudges this mortgage to be a fraud upon the court, it seems to me utterly baseless. There are no signs of any effort or of any purpose to deceive the chancellor with regard to it. Indeed, from the many adjournments of the insolvency proceedings, the petition of Bresnan & Walker, and the consent to the discontinuance, he must have perceived that some settlement satisfactory to the creditors in the cause had been effected, and he had no ground for a surmise that such settlement embraced all the creditors of the corporation. The inference that the creditors in the cause were securing an advantage over creditors generally, was almost inevitable. Had the chancellor deemed himself cheated into signing the order for discontinuance, he would certainly have set it aside on motion and so have restored the cause, but on application he was content to change its date from November 17th, the day on which he expressed his

willingness to sign it, to November 19th, the day he actually signed it.

The next question is, whether the mortgage should be set aside, because opposed to the terms of the chancellor's restraining order.

This question, I think, finds a decisive answer in the proposition, which has often been judicially announced and applied, and, so far as I have discovered, has never been judicially disputed, that a suit instituted by a creditor, though on behalf of himself and other creditors who may come in, is subject to the complete and absolute dominion of the parties until decree is made, that they are entitled to settle and have the suit dismissed, without the consent of other creditors, at any time before decree, and that until decree the other creditors have no interest in the suit. *Handford* v. *Storie, 2 Sim. & S. 196; Pemberton* v. *Topham, 1 Beav. 316; Innes* v. *Lansing, 7 Paige 583; Thompson* v. *Fisler, 6 Stew. Eq. 480.*

Such a bill does not resemble one filed by a complainant on behalf of himself and others who are under a mutual obligation to share proportionately in a common fund, for creditors are at liberty to be vigilant in obtaining preferences over each other against their common debtor, and under the rule above stated this liberty ends only when the court, by decree, has determined to assume the administration of the debtor's affairs.

That creditors of insolvent corporations in this state may be preferred under the same circumstances as those of insolvent individuals, this court decided, in *Wilkinson* v. *Bauerle, 14 Stew. Eq. 635,* where Justice Magie, delivering our opinion, said, after showing that the legislation prohibiting preferences by insolvent corporations had been repealed in 1875: "If there be no legislative prohibition against the transfer of corporate property or its use in preferring creditors after insolvency, no reasons can be given why such transactions should be invalidated which would not also invalidate the like transactions of individuals. Both reason and authority establish the proposition that a corporation may sell and transfer its property, and may prefer its creditors, although it is insolvent, unless such conduct is prohibited by law." In the same opinion, speaking of the existing legislation,

he said: "There is nothing in it to justify the inference of an intended prohibition of sales and transfers of corporate property or preference of creditors, until a receiver has been appointed under the proceedings prescribed."

According to these doctrines, I think that a creditor's bill against an insolvent individual, partnership or corporation, is, before decree or the appointment of a receiver, a mere suit *inter partes;* that orders made therein are the concern only of the parties in the cause; that anything done with their common consent cannot justly be regarded as violating an injunction of the court, and that strangers to the cause have no right to complain of their conduct, except upon grounds which would justify the complaint if no suit were pending.

Hence, in my judgment, the decree should be reversed.

*For affirmance*—THE CHIEF-JUSTICE, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, WHITAKER—7.

*For reversal*—DIXON, GARRISON, SMITH—3.